UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

| | | |
|---|---|---|
| JERMAINE HUNTER, TDOC #163401 | ) | |
| | ) | |
| v. | ) | NO. 2:11-CV-06 |
| | ) | *Greer/Inman* |
| RONDAL CLARK, Sgt.[1] | ) | |

**MEMORANDUM OPINION**

Acting *pro se*, state prisoner Jermaine Hunter filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, [Doc. 2], asserting violations of his Eighth Amendment right not to be subjected to excessive force. Plaintiff also alleged a state law claim for assault and battery. The single remaining defendant, in his personal capacity (official capacity claims were dismissed by prior order), has submitted an unopposed motion to dismiss or for summary judgment, along with supporting affidavits, deposition testimony, a brief, and a statement of material facts, [Docs. 33-34, 36]. Defendant's motion is well-taken and, for the reasons below, will be **GRANTED**.

**I. Standards of Review**

A motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), will be granted if a complaint fails to state a claim for relief. To survive such a motion, the pleading "must contain either direct or inferential allegations respecting all the material elements necessary to

---

[1] The Court has corrected the misspelling of defendant's given name, based on the spelling contained in defendant's affidavit, (Doc. 34-2, Affidavit of Rondal Clark).

sustain recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted). In ruling on a defendant's motion to dismiss, all well-pleaded factual allegations contained in the complaint must be accepted as true, and all reasonable inferences must be drawn in a plaintiff's favor. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted). The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, a plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). If matters outside the pleadings are presented to and not excluded a motion to dismiss for failure to state a claim must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(b). Because defendant has submitted affidavits and deposition testimony in support of his motion and because the Court will consider those documents, the motion to dismiss will be evaluated under the summary judgment scheme enunciated below.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party who is contending that a fact cannot be or is not genuinely in dispute must support that contention by citing to parts of the record, to include depositions, documents, affidavits, or other materials or by showing that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Though the burden of establishing that there is no genuine dispute concerning a material fact lies on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986), the nonmoving party cannot rest upon mere allegations or denials in its pleadings, but must come forward with "specific facts" to show there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586-87.

Once the moving party presents evidence sufficient to support a motion for summary judgment, the non-moving party is not entitled to a trial merely on the basis of allegations, as mere allegations of a cause of action will no longer suffice to get a plaintiff's case to the jury. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989). The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *Anderson,* 477 U.S. at 249. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for jury to return a verdict for that party; if the evidence is merely colorable or is not significantly probative, or if a court concludes that a fair-minded jury could not return a verdict in favor of a plaintiff based on the evidence presented, summary judgment is appropriate. *Id*. at 249-52 (citations omitted).

## II. Factual Background

Plaintiff is in the custody of the Tennessee Department of Correction and is now confined in the Bledsoe County Correctional Complex. Defendant Sgt. Rondal Clark is a

3

correctional officer at the Northeast Correctional Complex (hereinafter NECX) in Mountain City, Tennessee. Plaintiff brought this action for an alleged use of excessive force and racial epithets by defendant correctional officer, which is claimed to have happened on August 22, 2010, while plaintiff was an inmate at the NECX. Plaintiff specifically pled that, on that date, as he was leaving the staff room side of the dining hall to go to the inmate side and, ultimately, to access the kitchen where he was assigned to work, he was stopped by defendant Clark and asked where he was going. Plaintiff tried to explain to defendant why he was going to the inmate side, but his explanation fell on deaf ears. Defendant then grabbed plaintiff very aggressively by his arm, placed handcuffs on him, jerked his wrist and pulled him by the wrist to the operations area, causing bruises to his wrist.

When the two reached the operations area, defendant grabbed plaintiff by the neck with both hands and began to choke him violently, shoved him down on a bench, and yelled at him while continuing to apply pressure to his neck. At this point, "[a] white form substance started forming around the edges of [defendant's] mouth as he continued choking and cursing [plaintiff]," [Doc. 2, Compl. at 4]. Defendant then told plaintiff to return to the kitchen and [by inference] plaintiff complied with this directive. However, a few minutes later, defendant entered the kitchen, saw plaintiff standing against a wall, and instructed plaintiff to come with him. Plaintiff followed defendant outside, where defendant ordered plaintiff to get a milk crate and to "pick up rocks like a good n____." Defendant started laughing and told plaintiff "to get to picking up rocks boy!"

4

Plaintiff further alleged, in his pleading, that he did nothing to provoke the physical attack against him by defendant and that, at no time, did plaintiff disrespect or resist defendant or refuse to obey his directives. Plaintiff asks for injunctive, declaratory, and monetary relief to vindicate the alleged violation of his Eighth Amendment right to be free of unjustified and excessive use of force and verbal abuse.

In his summary judgment motion and in his affidavit, defendant admits that an encounter occurred between himself and plaintiff, but asserts that it was occasioned by plaintiff's being out of place, meaning that plaintiff was in an area near the prison kitchen where he should not have been, which constitutes a disciplinary infraction. Plaintiff, who was assigned to work in the kitchen, was not only out of place, according to defendant, but he was also attired in a blue shirt, rather than the white shirt mandated for kitchen workers.[2] Defendant maintains that he questioned plaintiff about the matter, but that plaintiff grew loud and belligerent, began waiving his arms and pointing his fingers, and refused to answer the questions. Defendant maintains that, at this juncture, he escorted plaintiff to the operations area, to secure assistance from his supervisor, then-Captain now Deputy Warden Todd Wiggins, in diffusing the situation. After a discussion amongst Wiggins, defendant, and plaintiff, defendant escorted plaintiff back to the

---

[2] According to defendant's affidavit, inmate kitchen workers are required to wear white shirts to make them more detectible by guards when they, in derogation of their assigned duties, associate with inmates in the dining hall, who dress in prison garb, including blue shirts, [Doc. 34-2, Affidavit of Rondal Clark at 2]. At the time of the encounter, the facility was experiencing a problem involving an oversupply of inmate kitchen workers, some of whom were gang members. With idle time on their hands, inmate kitchen workers, who were also members of gangs, would fraternize with other gang members eating in the dining hall, rather than remaining in the kitchen working, [*id*.].

5

kitchen to resume his work shift. No further interaction occurred between defendant and plaintiff on that date, as defendant recalls.

However, the day after the August 23, 2010, incident, plaintiff filed a grievance complaining about defendant's conduct. A grievance hearing was held on August 31, 2010, and evidence and testimony by plaintiff was offered. Wiggins, who conducted an investigation into the allegations in the grievance and reviewed the footage of the security cameras placed in the areas where the complained of conduct allegedly occurred, submitted a statement to the grievance board, explaining that his review of the security tapes did not reveal that defendant had assaulted plaintiff or engaged in any inappropriate conduct towards plaintiff. Wiggins, therefore, recommended that plaintiff's grievance be denied, and the case was submitted to the Warden for a determination on the merits. Wiggins' recommendation was followed and the grievance was denied. Plaintiff failed to obtain relief in his administrative appeal of the disposition of his grievance.

Wiggins' affidavit, which defendant has submitted, essentially tracks the assertions made in the summary judgment motion, [Doc. 34-8, Affidavit of Todd Wiggins]. In the affidavit, Wiggins avers that, during his meeting with defendant and plaintiff on August 22, 2010, following the alleged assault and that plaintiff said nothing about having just been choked by defendant, that he (Wiggins) did not observe on plaintiff any bruising, marks, or other indicia of a struggle. Wiggins likewise states that, had he observed any injury on plaintiff or had there been any signs of a physical altercation between the two, he would have taken

plaintiff for a medical examination. Additionally, Wiggins testifies, in his affidavit, that he had a full view of the two benches outside the operations area (where the choking allegedly occurred), and that he saw no use of force, excessive or otherwise, or any inappropriate behavior on the part of defendant on that date.

Defendant has also filed the affidavit of Warden David Sexton, who testifies that, based on determinations made during Wiggins' investigation, he (Sexton) agreed that plaintiff's allegations of excessive force were unfounded, saw no need to discipline defendant, and upheld the denial of the grievance, without undertaking any further action, [Doc. 34-5, Affidavit of David Sexton].

In his motion, defendant asserts that he does not recall whether he applied hand cuffs to plaintiff, but he "strenuously denies" choking plaintiff or using any racially charged or abusive language during the episode which forms the basis of this complaint, [Doc. 34 at 3]. (However, purely for the purpose of deciding this motion, the Court will deem that defendant agrees that the choking and use of racial abusive language occurred.). Even so, defendant asserts that because the complaint fails to allege an injury and because there is no credible evidence to support that an injury exists, plaintiff has failed to state a claim for relief. Furthermore, according to defendant, any injury possibly alleged by plaintiff was *de minimis* and such an injury will not sustain an Eighth Amendment claim. By the same token, the purported use of racially-derogatory and abusive language, as is alleged by plaintiff, does not

7

violate the Eighth Amendment, so maintains defendant. Defendant therefore asserts that he is entitled to summary judgment based on plaintiff's failure to state a claim.

### III. Discussion

A. *Moot Claims*

The Court notes at the outset that the jurisdiction of federal courts is limited to "cases and controversies." U.S. CONST. art. III, § 2, cl.1. A case becomes moot "when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome." *Cleveland Branch, NAACP*, 263 F.3d at 530 (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). Here, plaintiff seeks injunctive and declaratory relief from the alleged wrongful treatment to which he was subjected at the NECX, but he was transferred from that facility after he filed this lawsuit, [Doc. 7]. Clearly, correcting the conditions at NECX of which plaintiff complains would provide plaintiff no benefit because he is no longer confined in that institution and does not indicate that he expects to be imprisoned in there in the future. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (noting that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Thus, all plaintiff's claims for declaratory and injunctive relief are **MOOT**. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (inmate's claims for declaratory and injunctive relief

8

rendered moot upon his transfer to a different facility). Though defendant has not asked for summary judgment as to these claims for relief, he is entitled to it. Fed. R. Civ. P. 56(f).

B. *Excessive Force Claims*

   1. *Applicable Law*

The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment," and the use of excessive force against prisoners may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). However, not every use of intentional force upon a prisoner by a prison official will rise to the level of an Eighth Amendment violation. *See Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986) ("[T]he good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment.") (citations omitted).

An Eighth Amendment claim is comprised of both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 833-36 (1994). The objective element of the claim requires plaintiff to show a "sufficiently serious" deprivation, *id*. at 834, (i.e., that the force was "harmful enough" to establish a constitutional violation). The subjective inquiry is focused on whether a defendant possessed a culpable state of mind. In the context of excessive force, the question is one of a defendant's intent—whether a defendant used force in a good faith effort to restore order or maliciously and sadistically for the very purpose of causing harm. *Hudson*, 503 U.S. at 6-7; *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Thus, plaintiff needs to produce evidence that the force was "harmful enough to establish a

constitutional violation" and applied "maliciously and sadistically to cause harm" rather than in a "good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 7-8.

Excessive force claims, as *Hudson* directs, must be decided " based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). Still, "the extent of injury may suggest whether the use of force could plausibly have been thought necessary . . . [and] provide some indication of the amount of force applied," even though "[i]njury and force . . . are only imperfectly correlated." *Id.* at 37-38. But, it remains that a prisoner's complaint "of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (citations and internal quotation marks omitted). The analysis of an excessive force claim involves an inquiry into "the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted" and the inquiry "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable post hoc judicial second-guessing." *Parrish*, 800 F.2d at 605.

2. *Analysis*

Plaintiff asserted, in his complaint, that defendant grabbed him by the arm, handcuffed him, and jerked him by the wrist towards the operations area, causing bruises on his wrist and that, upon arrival in the operations area, defendant grabbed him by the neck with both hands, choking him in a violent manner, and shoved him down onto a bench. No injuries from the

choking were alleged in the complaint, though plaintiff did allege that he did not disrespect or resist defendant or refuse to obey his directives.

a. *Was force used in a good-faith effort to maintain or restore discipline or a maliciously and sadistically to cause harm*?

Plaintiff does not contest that the incident was prompted by defendant's observation of plaintiff emerging from the staff side of the dining room and his questioning of plaintiff about being out of place. Indeed, plaintiff concurs with defendant that he was exiting the staff side of the dining room, where he was not assigned to work, and that he was not in the prison kitchen, where he was assigned to work as an inmate kitchen worker. The uncontroverted evidence also shows that being out of place is a prison disciplinary offense, which would have supported a disciplinary charge, [Doc. 34-2, Clark Aff.; Doc. 34-8, Wiggins Aff.], though plaintiff was not issued a write-up for the infraction.

Likewise, plaintiff admits that he was wearing a blue shirt, whereas defendant states, in his affidavit, that inmate kitchen workers are required to wear white shirts, to distinguish them from other inmates wearing blue shirts who are eating in the dining area and, thus, to make it easier to detect inmate kitchen workers who are not attending to their duties in the kitchen but, instead, are mingling with inmates in blue shirts in the dining room. Plaintiff's attire in a blue shirt supplied defendant with an additional reason to question plaintiff on that date.

This evidence shows that defendant was justified in confronting plaintiff about his conduct—conduct comprising the prison infraction of being out of place and conduct

11

evidencing a violation of the requirement that inmate kitchen workers don white shirts. The proof shows that defendant approached plaintiff to question him about his behavior. While plaintiff maintains that he did not engage in disrespectful or resistant behavior towards defendant and that he obeyed defendant's directives, he does not state that he answered defendant's questions or that he did not become belligerent. The evidence, therefore, is that plaintiff did not answer those questions and became belligerent towards defendant.

Defendant did not engage in the encounter with plaintiff gratuitously but, on the evidence presented, to investigate conduct on the part of plaintiff which violated a prison rule and the dress code for inmate kitchen workers. Thus, an inquiry into that behavior was in order. Clearly, the security of a correctional facility would be seriously compromised if inmates were permitted to wander at will from their work sites to other locations within the facility. *See e.g., Allen v. Thaler*, 2012 WL 92562, 5 (S.D.Tex. Jan. 10, 2012) ("Prison officials have a legitimate penological interest in maintaining security by verifying the identity of each inmate and ensuring he is actually still incarcerated and is in the proper cell . . . .").

Therefore, plaintiff has not shown that defendant possessed the requisite culpable state of mind, to wit, that the complained of incident ensued from defendant's malicious and sadistic intent to cause harm plaintiff, rather than from his good faith effort to achieve a legitimate purpose.

b. *What type and how excessive was the force used and was there a sufficiently serious deprivation?*

Plaintiff alleged in his complaint that he sustained a bruised wrist as a result of handcuffs applied by defendant, [Doc. 2 at 3]. Plaintiff further alleged that defendant placed both hands around plaintiff's neck and choked him, but plaintiff did not contend that he suffered any injury thereto, [*id.*]. In plaintiff's pretrial narrative statement, plaintiff again asserts that his wrist was bruised from the handcuffing, [Doc. 17 at 1], but once again to fails to allege any injury to his neck as a result of the choking episode.

In his deposition testimony, however, [Doc. 34-1, Deposition of Jermaine Hunter], plaintiff omits any mention of an injury to his wrist, but instead claims, albeit equivocally, an injury to his neck. For example, plaintiff initially stated that "I'm gonna be honest ... ; I didn't have no injuries to my neck," [*id.* at 47]; then denied that he had "any visible injury" to his neck, then averred that he had "just red and some bruising, that's all ... from his [defendant's] hand prints," [*id.* at 48], next testified that, when he returned from the operations area, the injury "was visible" and "you couldn't miss it," [*id.* at 49], and, finally, described the injury to his neck as "a little bruising," [*id.* at 53]. Plaintiff admits, in that testimony, that he sustained no lasting injury and that he has never sought medical treatment for injuries to his neck, [*id.* at 53].

Furthermore, there is no evidence that any individual, even those persons who saw plaintiff immediately after the alleged assault, saw any redness or bruising on plaintiff's body. Plaintiff himself was unable to identify specifically anyone who witnessed any injuries on him. Plaintiff did not seek medical care for his injuries following the incident and has not sought medical attention for his injuries at any time since the purported assault.

It is true that the objective component of an Eighth Amendment claim does not depend upon the extent of the injury, but rather upon "the nature of the force." *Wilkins*, 550 U.S. 39; *see also Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("The seriousness of the injuries are not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident.'"). While the absence of serious injury or presence of a injury which is *de minimis* does not bar an excessive force claim, it is a factor, as previously observed, in ascertaining whether the use of force could have been thought necessary and also in determining the amount of force applied.

As indicated earlier,, the extent of the injury may provide evidence of the nature of the force used, and it appears that such is the case here. The gamut of descriptions of plaintiff's injury, to which he testified in his deposition—varies from "no injuries to my neck" to "a little bruising"—implies that not only were plaintiff's injuries *de minimis* (which does not foreclose recovery on an excessive force claim under the Eighth Amendment, *see Wilkins*), but also suggests that the force allegedly used likewise was *de minimis*. At the same time, there is no indication that this *de minimis* use of force is the type which is "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. 38-39. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. 38 (citing *Hudson*, 503 U.S. at 7).

While the act of choking, under certain circumstances, may be more serious than a push or shove, it is this Court's conclusion that plaintiff has not shown that the force was "harmful

14

enough to establish a constitutional violation," that no fair-minded jury could return a verdict in favor of plaintiff based on the proof offered, and that, thus, defendant is entitled to summary judgment on the excessive force claim.

c. *Inconsistencies*

Aside from the wide variations in plaintiff's descriptions of his injury, there are other inconsistencies with regard to the alleged incident of excessive force which bear mention. For example, plaintiff asserts, in his complaint, that a white foamy substance developed around the edges of *defendant's* mouth as he choked plaintiff, [Doc. 2 at 4], whereas in plaintiff's pretrial narrative statement, plaintiff maintains that, as he was being choked, *he* [plaintiff] "began foaming around the mouth gasping for air," [Doc. 17 at 2].

Plaintiff's identification of the witnesses to the claimed choking incident and his summary of the testimony purportedly to be offered by such witnesses are equally inconsistent. Plaintiff waffled in his deposition as to whether another inmate, one George Faulkner, witnessed plaintiff being choked by defendant, [Doc. 34-1 at 27-36]. Plaintiff first disclaimed that Faulker saw the choking encounter, then maintained that Faulkner witnessed the incident from the moment that defendant grabbed plaintiff. In Faulker's affidavit, which defendant has submitted, Faulkner states that, though he saw defendant treat plaintiff roughly as they crossed the yard, he did not see any incident between the two inside the building near the operations section, nor did he see defendant with both hands around plaintiff's neck, choking him in a violent manner for thirty seconds, as plaintiff alleged, [Doc. 34-4, Affidavit of Inmate George Faulkner at 2].

15

Case 2:11-cv-00006-JRG-DHI   Document 38   Filed 06/17/13   Page 15 of 19   PageID #: 266

Moreover, while plaintiff avers that he did not speak with Faulker regarding Faulker's proposed testimony, Faulker states that after the grievance hearing, plaintiff approached him numerous times, asking Faulkner to be a witness for plaintiff, [*id*.]. The noted inconsistencies are so pronounced, in this Court's opinion, that "a reasonable jury could [not] return a verdict for the plaintiff." *See Peterson v. Johnson* 714 F.3d 905, 918 (6th Cir. 2013) (quoting *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)); *see also Moore v. Holbrook*, 2 F.3d 697, 702 (6th Cir. 1993) (Batchelder, J. dissenting) ("[G]iven modern summary judgment practice, parties' inconsistent accounts of an event may not warrant a trial.") (citations omitted).

### d. *Prior Physical Injury*

Pursuant to the Prison Litigation Reform Act, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Sixth Circuit has interpreted § 1997e(e) to require a prisoner bringing any claim under the Eighth Amendment to show more than a *de minimis* physical injury. *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("We have indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward.") (listing cases).

*De minimis* injuries, for purposes of § 1997e(e), have been found where the injury involved swelling, pain, and cramps in legs, *Jarriett v. Wilson*, 162 Fed. Appx. 394, 400-401, 2005 WL 3839415, 3 (6 Cir. July 7, 2005); emotional distress, embarrassment, humiliation,

and itching, *Robinson v. Corrections Corp. of America*, 14 Fed. Appx. 382, 2001 WL 857204 (6th Cir. June 20, 2001); two small bruises or minor cuts on a shoulder, *Corcetti v. Tessmer*, 41 Fed. Appx. 753, 755 (6th Cir. June 25, 2000); a sore, bruised ear lasting for three days, *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997); and a sore muscle, an aching back, a scratch, an abrasion, a bruise, which lasts even up to two or three weeks, *Luong v. Hatt*; 979 F.Supp. 481, 486 (N.D. Tex. 1997), *but see Morrison v. Board Of Trustees Of Green Tp.*, 583 F.3d 394, 403 (6th Cir. 2009) (a Fourth Amendment claim of excessively forceful handcuffing during an arrest can be based on bruising and numbness).

Because plaintiff alleges, at most, a *de minimis* physical injury, § 1997e(e) forecloses his claims for damages. Defendant is entitled to summary judgment on these claims also.

C. *Verbal and Racial Abuse Claims*

Plaintiff maintains that defendant yelled at him, referred to him with a racial epithet, and called him "boy," which is has racial implications, given this country's history of racial relations. This conduct may well manifest behavior on the part of the officer defendant which is downright unprofessional and is likely a violation of the TDOC rules of employee conduct. But, unfortunately for plaintiff, such deportment is not actionable under § 1983. "'Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment.'" *Johnson v. Unknown Delatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987)).

Though harassment and verbal abuse are denigrating and doubtlessly infuriating to the victim, these things do not comprise the type of infliction of pain reached by the Eighth

17

Amendment. *Id*. (citing *Ivey*, 832 F.2d at 954-55). Put simply, plaintiff has no protectable right not to have verbal abuse directed towards him. *See Ivey*, 832 F.2d at 954-55 (explaining that verbal abuse is not recognizable under § 1983). Thus, this claim lacks an arguable basis in law and is frivolous within the meaning of 28 U.S.C. § 1915(d).

D. *Assault & Battery Claims*

The only claims which remain outstanding are plaintiff's assault and battery claims, asserted under state law. When all federal claims have been dismissed, the preferred disposition of such a claim is dismissal, *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010), but under limited circumstance, a federal district court should exercise its discretion to retain supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Because none of those circumstances exist here, pursuant to 28 U.S.C. § 1367(c), this Court declines to exercise supplemental jurisdiction over plaintiff's pendant State claims and will **DISMISS** them without prejudice.

## IV. Conclusion

Based on the above reasoning, the Court will **GRANT** defendant's motion for summary judgment and will **DISMISS** the federal claims. Pursuant to 28 U.S.C. § 1367(c) this Court declines to exercise supplemental jurisdiction over plaintiff's pendant State claims and will **DISMISS** them without prejudice. Finally, after carefully reviewing pleadings and other filings in this case, pursuant to 28 U.S.C. § 1915(a)(3) and for the reasons set forth above, this Court hereby **CERTIFIES** that any appeal from this action would not be taken in good faith.

A separate order shall enter.

**ENTER**:

         s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE